UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

 v.              Case No. 13- CR-219

LISA A. LEWIS,

    Defendant.

---

## SENTENCING MEMORANDUM

---

  Lisa A. Lewis, by counsel, hereby submits this sentencing memorandum. Counsel respectfully requests that the Court impose a sentence of 96 months (8 years) imprisonment to be followed by three years of supervised release. As grounds, counsel submits the following.

**I. PROCEDURAL HISTORY**

  On November 5, 2013, the government filed a five-count indictment charging Lewis with wire fraud contrary to 18 U.S.C. § 1343. Docket No. 1. Lewis appeared the next day for an arraignment and was temporarily detained. Lewis then appeared on November 8, 2013, and was ordered detained by Magistrate Judge Sickel. Counsel for Lewis filed an appeal of the detention order. Docket No. 10. The District Court held a hearing on November 20, 2013, and the Court ordered that Lewis' detention be continued. Docket No. 11.

  After a relatively short delay for the parties to finalize an agreement on restitution, on March 14, 2014, Lewis entered a guilty plea to Count Five of the

indictment. Docket Nos. 16, 17. Sentencing was scheduled for June 9, and was later rescheduled to June 11, 2014.

The United States Probation Office prepared a pre-sentence report, to which objections are pending. Lewis filed a *pro se* request for new counsel which is also pending. The Court will address these pending issues at the hearing scheduled for June 11, 2014.

## II. APPLICABLE LAW

### A. *Sentencing Guidelines*

The parties' positions regarding the applicable sentencing guidelines are set forth in the plea agreement at Paragraphs 13 - 21. Docket No. 17. The parties agreed that the applicable base offense level is 7 under U.S.S.G. § 2B1.1(a)(1). Docket No. 17 at ¶17. Pursuant to the plea agreement, the government will recommend the following offense level increases:

> 16 level increase for loss amount exceeding $1 million but less than $2.5 million pursuant to § 2B1.1(b)(1)(I)
>
> 2 level increase for ten or more victims pursuant to § 2B1.1(b)(2)(A)
>
> 2 level increase for sophisticated means pursuant to § 2B1.1(b)(10)
>
> 2 level increase for the abuse of a position of trust pursuant to § 3B1.3
>
> 4 level increase for the offense involving a large number of vulnerable victims pursuant to § 3A1.1(b)(1), (2)
>
> 3 level decrease for acceptance of responsibility pursuant to § 3E1.1(a), (b)

Based upon those recommendations by the government, and based upon the likely finding that Lewis would be in criminal history category I, the plea

agreement contemplates an advisory guideline range of 97 - 121 months. (*See*, e.g., PSR ¶165).

The PSR calculates the advisory guidelines from Paragraphs 96 - 114. As noted in counsel's objections and in the addendum to the PSR, the guideline calculations found within the PSR are moderately different than those found in the plea agreement. The PSR calculates the guidelines as follows:

> Base Offense Level of 7 pursuant to § 2B1.1(a)(1)
>
> 16 level increase for loss amount exceeding $1 million but less than $2.5 million pursuant to § 2B1.1(b)(1)(I)
>
> 2 level increase for sophisticated means pursuant to § 2B1.1(b)(10)(c)
>
> 2 level increase for the unlawful use of a means of identification pursuant to § 2B1.1(b)(11)(C)(I)
> -NB: this increase is not found in the plea agreement
>
> 2 level increase for the offense involving more than ten victims pursuant to § 2B1.1(b)(2)(A)(I)
>
> 2 level increase for vulnerable victims pursuant to § 3A1.1(b)(1)
>
> 2 level increase for abuse of a position of trust pursuant to § 3B1.3
>
> 2 level increase for obstruction of justice pursuant to § 3C1.1
> -NB: this increase is not found in the plea agreement
>
> 3 level reduction for acceptance of responsibility pursuant to § 3E1.1(a), (b)

The PSR therefore finds that the total offense level is 32. The PSR concludes that Lewis has one criminal history point based on a 2012 conviction for operating while intoxicated. PSR ¶112. One criminal history point establishes a criminal history category of I. PSR ¶114.

3

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Case 1:13-cr-00219-WCG   Filed 06/08/14   Page 3 of 15   Document 25

Based on a total offense level of 32 and a criminal history category of I, the PSR calculates the advisory guideline imprisonment range to be 121 - 151 months (10 - 12½ years). PSR ¶163.

The PSR applies two guideline sections that were not included in the plea agreement. The first is found in Paragraph 100, where the PSR applies a two-level increase because the offense involved the transfer or use of a means of identification to unlawfully produce another means of identification. The second is found in Paragraph 104, where the PSR applies a two-level increase for obstruction of justice for Lewis directing her mother to shred financial documents and by Lewis directing others to not speak with law enforcement without an attorney.

Counsel objected to the PSR's guideline calculations in a letter to the United States Probation Office on May 30, 2014. Counsel for Lewis objects to the two-level increase regarding use of a means of identification. Though double-counting is difficult to argue in the Seventh Circuit, *United States v. Vizcarra*, 668 F.3d 516, 525 (7th Cir. 2012)(double counting is generally permissible unless the text of the guideline expressly prohibits it), this is a case where the practical effect of the application of this guideline results in double counting. A "means of identification" is defined very broadly and essentially includes anything with a number that can be attached to a person or any type of account. *See* 18 U.S.C. § 1028(d)(7); *see also* § 2B1.1, background. The use of means of identification in this case, though, are part and parcel of the wire fraud scheme charged in the indictment. Specifically, the indictment alleged a scheme to defraud involving creation of accounts, passwords, and debit or credit cards, all of which were used to transfer and spend victim funds. It would seem, therefore, that the "use of a means of identification" is part of the baseline facts of the case and therefore would already be encompassed in either the

base offense level or the 16-level increase for loss amount. To apply a further increase for use of a means of identification as contemplated in the PSR would practically result in the same behavior being counted twice. *Vizcarra* at 525, n.3 ("It might be argued in individual cases that double counting is unfair. But if the guidelines range is arguably too harsh, the sentencing judge has ample discretion to impose a sentence outside the range.")

Counsel also objects to the two-level increase for obstruction of justice. As noted in the objection letter attached to the PSR, counsel for Lewis first argues that any obstructive or attempted obstructive behavior was not material to the issue under determination. Law enforcement recovered the relatively small amount of shredded documents regarding the Shiners. Furthermore, Lewis agreed to include the loss amount relative to the Shiners in the stipulated restitution figure found in the plea agreement and PSR. If there was any effect from this behavior, it would be *de minimis* and it would not tend to influence or effect the issue under determination as required by the guidelines definition of materiality. Second, any direction by Lewis to others to not speak to law enforcement without an attorney present would not rise to the level of obstruction. Lewis did not direct anyone to lie; rather, she told them to exercise a constitutional right.

Finally, Lewis agrees with the PSR's analysis regarding the enhancement for vulnerable victims. The government contends that a four-level increase applies (for a "large number" of vulnerable victims), while the PSR applies only a two-level increase. The addendum to the PSR notes that the "large number" increase contemplates use in cases of telemarketing fraud. The PSR concludes that there is not a "large" number of victims and that the case does not involve a

5

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Case 1:13-cr-00219-WCG   Filed 06/08/14   Page 5 of 15   Document 25

telemarketing scheme, so only the two-level increase should apply. Counsel for Lewis agrees.

### B. *Statutory Provisions*

Lewis faces a maximum term of imprisonment of 20 years. 18 U.S.C. § 1343; PSR ¶162. The maximum fine is $250,000, with a guideline fine range of $17,500 - $175,000. PSR ¶¶183, 185. If a term of imprisonment is imposed, the Court may order a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2); PSR ¶166.

## III. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The indictment, plea agreement, and PSR all contain a factual description of the case. *See* Docket Nos. 1, 17, 21. In very short summary, between 2006 and 2013 Lewis defrauded approximately 12 elderly investors located in the Green Bay area. Lewis either created accounts or assisted the victims in opening accounts with Fidelity Investments. Lewis would then create joint accounts under her own name as well as that of the victim. Lewis was then able to transfer funds from a victim's personal account to the joint account and then to Lewis' personal accounts. Lewis made a variety of transfers between accounts, made cash withdrawals, made debit card withdrawals and purchases, as well as wrote checks on a variety of accounts. Lewis used the funds for personal expenses, gambling, acquiring and maintaining real estate, and to pay bills and living expenses for herself and other people.

Lewis and the government agreed to the entry of a forfeiture against Lewis in the amount of $2,021,486.41. Plea Agreement, Docket No. 17, ¶33. This amount also stands for the amount of restitution owed by Lewis. Docket No. 17, ¶31.

Lewis also agreed to forfeit any interest that she has in five residences and/or parcels of real estate as listed in the plea agreement. Docket No. 17, ¶33.

## IV. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Lewis is 48 years old. She was born in Green Bay and was raised in an intact family, though her parents divorced in 1999. PSR ¶119. Lewis has had regular contact with her parents, even while she has been in custody. *Id*. Lewis has three siblings, all of whom live in Green Bay. PSR ¶120. Lewis relates that she has a good relationship with her siblings and that they have been supportive of her since her arrest. *Id*.

Lewis' home life while growing up was unstable. The defendant's sister agrees that she and her siblings were affected by their father's alcoholism. PSR ¶¶122, 124. Lewis' sister relates that as the oldest child, the defendant took care of the younger siblings and shielded them when their father was abusive. PSR ¶124. Lewis' father and sister described the defendant as a good daughter and a good mother, and noted they are frustrated by and have no explanation for the instant offense. PSR ¶¶123, 124.

Lewis appears to have a history of dating men who are abusive. Lewis' boyfriend (Pressley) during a portion of the time frame charged in the indictment was physically and emotionally abusive. The defendant's sister disliked Pressley enough that she cut ties with the defendant during the time Lewis was dating him. PSR ¶129. Pressley purchased a car with money received from Lewis as noted in both the indictment and plea agreement. Docket Nos. 1, 17. Pressley was interviewed several times by law enforcement during the pendency of the case. While Pressley denied any involvement in the transfer of funds, he was blatantly eager to spend and enjoy the proceeds of Lewis' financial transactions. During an

interview that was transcribed by law enforcement, Pressley described himself as a man who wants a woman who would pay his bills and that if someone has a million dollars, his only question would be how fast could he spend it. The defendant's sister confirms that Pressley was a negative influence in Lewis' life. PSR ¶129.

Lewis has some health concerns as outlined in the PSR. She has knee pain from a prior surgery and may eventually require a knee replacement. PSR ¶134. Medical records indicate a history of obesity, depression, and arthritis. PSR ¶137.

Lewis has never participated in any mental health or emotional counseling. PSR ¶143. She takes an anti-depressant that was prescribed by her family doctor. PSR ¶138. Lewis' depression began as a post-partum symptom in 2001 (PSR ¶138), and then was exacerbated in 2007 when Lewis discovered a close friend who had died via an overdose. PSR ¶139.

Though Lewis herself minimizes her gambling, the PSR is likely correct when it concludes that gambling is a big issue for Lewis. PSR ¶193. The defendant's sister stated that an addiction to gambling runs in the family, as both she and her father are addicted. PSR ¶142. The defendant's sister believes that Lewis has a gambling issue based on family history and on the fact that Lewis spent a lot of time in casinos in recent years. *Id.* Finally, discovery materials indicate many ATM withdrawals at casinos.

Lewis does not appear to have any AODA issues requiring treatment. She graduated from Green Bay Southwest High School in 1983. Though Lewis did not continue her education beyond high school, she did receive a variety of licenses and registrations in the investment field. PSR ¶149.

## V. ARGUMENT

Title 18 U.S.C. § 3553(a) provides the list of factors for the Court to consider when imposing a sentence. The factors provide general policy guidance for the Court, though not all of the factors are present in the same degree in every case. In counsel's view, whether a sentence is sufficient but not greater than necessary and whether the sentence provides just punishment are the primary purposes of sentencing.

While the Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009). Rather, the Court must treat the guideline range as one factor among several to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must consider all of the § 3553(a) factors, make an individualized assessment based on the facts presented, *Gall* at 49-50, and explain how the facts relate to the purposes of sentencing. *Id.* at 53-60; *Pepper v. United States*, 131 S.Ct. 1229, 1242-43 (2011). The Court's overarching duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough* at 101; *Pepper*, 131 S.Ct. at 1242-43. A sentencing judge has considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with § 3553(a). *United States v. Wachowiak,* 496 F3d 744 (7th Cir. 2007).

The Seventh Circuit has consistently recognized a district court's ability to deviate from the advisory guideline range. "[A] sentencing judge is always able, given the advisory nature of the Guidelines and the sentencing criteria set forth in 18 U.S.C. § 3553, to determine that the defendant's offense level and sentencing

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

range over – or under – represent the extent of his criminal conduct and to adjust the sentence accordingly." *United States v. Jackson*, 741 F. 3d 861, 2014 U.S. App. LEXIS at *11 (7th Cir. February 3, 2014); *see also United States v. Prado*, 2014 U.S. App. LEXIS 2933 (7th Cir. February 18, 2014) (sentencing court has the discretion to depart from the sentencing guidelines and has "considerable power to adopt its own framework in order to meet the ends of justice.").

The guidelines in this matter are in flux due to pending objections. The PSR's calculations result in a range of 121 - 151 months (approximately 10 - 12½ years)(PSR ¶163), while the calculations recommended by the government as found in the plea agreement result in a range of 97 - 121 months (approximately 8-10 years). Should the Court grant Lewis' PSR objections, and if the Court furthermore declines to apply the government's requested increase regarding a "large number" of vulnerable victims, the lowest advisory guideline range that could result would be 78 - 97 months (approximately 6½ - 8 years). The difference in these ranges show the difficulty in application of some sections of the guidelines to the same set of facts. The Court's conclusions as to the guidelines can create a wide swing at both the top and bottom of the ranges. Lewis, of course, would want the lowest of the applicable ranges to apply. But even then, given the primacy of § 3553(a) and the Court's post-*Booker* freedom to impose a reasonable sentence above or below the advisory guideline range, counsel must still address the general sentencing policies that apply in all cases.

Though the ranges listed above swing widely between the top (12½ years) and bottom (6½ years), the middle of the widest range is actually where both parties end up. As noted in the plea agreement, the government will advocate for a sentence of no more than 10 years. Docket No. 17, ¶24. Now and at the time of the

plea agreement, counsel for Lewis expected that the eventual advisory guideline range would be 97-121 months, or 8-10 years. With the government asking for 10 years and the defense asking for 8 years, the parties respectively occupy the top of the middle and the bottom of the middle of the possibly applicable ranges. In counsel's view, this middle range is where a reasonable sentence would be found.

The amount of loss found in this case is just over two million dollars. That amount itself, ignoring any other facts from the case, make this matter among the more serious fraud offenses presented to this Court. The remaining facts, because they cannot be ignored, exacerbate the seriousness of the offense. The age of the victims and the fact that several have been rendered destitute are compounding factors. When all are put together, the result is that a prison sentence will ensue. The guideline range of 97 - 121 months, however, adequately encompasses all of the facts found in the case. The amount of loss, of course, gives the largest guideline increase and essentially drives the case. But each other aggravating fact results in an increase as well, such as the number of victims and their vulnerability. Though arguments have been and will be made about the application of a few specific guideline sections (obstruction and use of a means of identification, above), the application of the guidelines to the obvious facts of the case is actually fairly straightforward and to a large extent unobjectionable. The salient facts result in a range of 97 - 121 months. That range adequately and accurately addresses the seriousness of the offense.

The sentence in any federal criminal case should promote respect for the law. Like beauty, respect is in the eye of the beholder. Some will find the sentence too short, no matter how long it is. Others will find it too long, no matter how short it is. Whatever the end result, neither side is asking for a short sentence

or a non-prison sentence. Eight years or ten years is a long sentence by anybody's estimation, and either term would provide generally the same amount of respect for the law. Respect also comes from the process of charging, conviction, and sentencing.

The length of the sentence imposed will certainly deter Lewis. It may also deter others, given that, again, both sides are asking for lengthy prison terms. Section 3553(a) requires that the sentence promote adequate deterrence, not perfect deterrence. No sentence can provide perfection, as some future offenders won't be deterred no matter what sentence is imposed. Overall, it is likely impossible to measure what additional amount of general deterrence flows from each additional year of a sentence. Twenty years might provide more than 10, but does ten really provide that much more than eight? Adequate deterrence may not be much of a determining factor when both sides are requesting prison terms that are in the same general region of time.

It is obvious that Lewis does not pose a physical danger to the public, as this offense and her one prior conviction did not involve violence directed toward any other person. Lewis does, however, pose a financial danger to the public. That type of danger is significantly reduced while Lewis is incapacitated, as she will have no ability to engage in any type of banking while within the BOP. This financial danger will also be lessened while on supervised release, as the conditions proposed in the PSR are designed to limit Lewis' ability to access financial instruments.

Lewis does not appear to have an alcohol or drug problem, so the usual context of provision of treatment does not apply. There are, though, areas where counseling could be afforded. Given the length of the time period charged

in the indictment, a criminal thinking or behavioral patterns class could be useful to help Lewis not return to her previous mindset. Given her history of dating abusive men, a class in identifying and avoiding manipulative and abusive relationships would be helpful. Finally, though minimized by the defendant, Lewis has a family history of gambling addiction as related by her sister. Providing treatment in this area both in and out of custody would help the defendant as well as serve to protect the public.

Even though the ultimate guideline range is in flux and yet to be determined, the sentence proposed by counsel would not result in an unwarranted disparity with other similar defendants. As noted above, the sentences proposed by the parties are in the middle of three potentially applicable ranges. An eight year sentence is within two of those ranges, and slightly below the third. An eight year sentence, therefore, is not an outlier to the guidelines. The intricacies of whether an eight year sentence is the top, bottom, or middle of a range matter, but in the final analysis an eight year term would be reasonable regardless of where it falls in a particular range.

The final sentencing concept, and likely the most important, is that the sentence provide just punishment. Victim comments in the PSR show a wide variety in the concept of what a just sentence might be. Several victims call for the maximum term of imprisonment; others are more measured, and a few say they aren't sure of what the right sentence would be. Some portion of these differences of opinion may be driven by the amount of loss suffered, but even so, victims in this case differ on what would constitute just punishment. This difference is echoed by the Seventh Circuit itself, which noted that some of the 3553 factors (such as just

punishment) are vague and not subject to easy definition. *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007).

A sentence of eight years would be just. It is either within or slightly below the potentially applicable guideline ranges, all of which thoroughly take into account the nature and circumstances of the offense. A sentence of eight years would also be sufficient but not greater than necessary, given the history and characteristics of the defendant. Lewis is 48 years old, and her custodial status in this case is the first time she has been in jail. Obviously, then, this will be Lewis' first prison sentence, and it will be a long one. She will not undergo the graduated series of punishments that build toward and then often result in a long prison sentence; rather, based on the facts of the case, Lewis will begin with a long sentence. The length of the sentence will likely punish her more, and more immediately, than would a similar sentence for a defendant who has been to prison before.

## VI.   CONCLUSION

Therefore, based upon the above arguments and those to be presented at the sentencing hearing, counsel for Lewis respectfully requests that the Court impose a sentence of 96 months (8 years) imprisonment, to be followed by three years of supervised release. Counsel requests that the Court decline to impose a fine, as Lewis does not have the financial ability to pay a fine within the guideline range. Counsel asks that the judgment reflect a recommendation for placement within the BOP at the appropriate facility closest to Green Bay.

Dated at Green Bay, Wisconsin, June 8, 2014.

Respectfully submitted,

**s/ Tom Phillip**

Tom Phillip, Bar #1023113
Attorney for Defendant
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301
Tel:  920-430-9900
Fax: 920-430-9901
tom_phillip@fd.org

N:\Cases-Open\K-L\Lewis, Lisa - 14-013\Sentencing\Sent MemoFINAL.wpd